UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| VILLAGE OF DOLTON, DOLTON ) | Case No. 09-cv-6351 |
| POLICE CHIEF ROBERT E. FOX, ) | |
| SERGEANT REMPSON (#8), ) | Judge John W. Darrah |
| DETECTIVE D. GRIFFIN (#611), ) | |
| DETECTIVE COLEMAN (#607), ) | |
| DETECTIVE MCNEAL (#609), ) | |
| OTHER UNKNOWN DOLTON ) | |
| POLICE OFFICERS, and ) | |
| DOLTON INSPECTOR GENERAL ) | |
| ROBERT SHAW, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

In 2008, Plaintiff, David Smith, was arrested and tried for battery, resisting arrest, and possession of marijuana. A jury found him not guilty on all charges. Smith then initiated the instant action under 42 U.S.C. § 1983 against the Village of Dolton, Illinois, and numerous named and unnamed individual village employees. Smith's seven-count Complaint alleges multiple constitutional violations associated with the arrest and trial. Before the Court is Defendants' motion to dismiss four of the counts in Smith's Complaint for failure to state a claim. For the reasons stated below, Defendants' Motion is granted in part and denied in part.

## BACKGROUND

The following facts are taken from Smith's Complaint and are accepted as true for purposes of this Motion. On or about July 26, 2008, Smith and his friends were at the Shark's Fish and Chicken restaurant in Dolton, Illinois, when they were approached by three of the Defendants: Detectives Griffin, Coleman, and McNeal. (Compl. ¶¶ 10-11.) Without justification, Detective Griffin grabbed Plaintiff, threw him onto the hood of a police car, struck him in the head, and threw him onto the pavement in the parking lot of the restaurant. (Compl. ¶ 12.) Detectives Griffin, Coleman, and McNeal then handcuffed Smith behind his back. (Compl. ¶ 13.) After Smith was handcuffed, Detectives Griffin and Coleman struck and kicked Smith in the face and body. (Compl. ¶ 14.) The three Detectives then dragged Smith to a police car and drove him to the Dolton Police Station. (Compl. ¶ 15.)

At the station, Detective McNeal took Smith to a holding cell and threw him to the ground while he was still handcuffed. (Compl. ¶ 16.) Smith's repeated requests for medical attention were ignored by Detective McNeal, Sergeant Rempson (another Defendant), and other unknown officers. (Compl. ¶¶ 17-18.) Smith remained in jail until he was released on bond in the early morning hours of July 26, 2008. (Compl. ¶ 19.) Smith continues to suffer as a result of his injuries. (Compl. ¶ 25.)

Detectives Griffin, Coleman, and McNeal then falsely charged Smith with possession of a small bag of marijuana they had recovered from another person at the scene of Smith's arrest, as well as battery and resisting arrest. (Compl. ¶ 20.) They also created false and misleading police reports and gave false accounts to Assistant State's

Attorneys about the circumstances surrounding Smith's arrest and the cause of his injuries. (Compl. ¶ 21.)

Smith hired a criminal defense attorney to represent him on the charges asserted by Detectives Griffin, Coleman, and McNeal. (Compl. ¶ 26.) During the criminal prosecution, Defendants withheld and/or destroyed documents and other evidence material to Smith's defense, including an audio recording of an eyewitness's 9-1-1 call and video-surveillance recordings from inside the Dolton Police Department. (Compl. ¶ 27.) Police Chief Fox (also a Defendant) and other unknown officers knowingly withheld evidence subpoenaed by Smith's criminal attorney, including reports and video related to Smith's arrest and incarceration. (Compl. ¶ 28.) A jury found Smith not guilty of all charges. (Compl. ¶ 31.)

## LEGAL STANDARD

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint." *Christensen v. County of Boone, Ill.*, 483 F.3d 454, 458 (7th Cir. 2007). In ruling on a motion to dismiss, the court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff. *Sprint Spectrum L.P. v. City of Carmel, Ind.*, 361 F.3d 998, 1001 (7th Cir. 2004).

Federal Rule of Civil Procedure 8(a)(2) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To meet Rule 8(a)(2)'s requirements, the complaint must describe the claim in sufficient detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*Twombly*)

(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The allegations in the complaint "must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (citing *Twombly*, 550 U.S. at 555). The plaintiff must provide more than bare "recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (*Iqbal*).

## ANALYSIS

Defendants move to dismiss the following counts: Count II – § 1983 Unlawful Search and Seizure; Count IV – Due Process Claim; Count V – § 1983 Conspiracy; and Count VI – Policy Claim.

### *Count II – § 1983 Unlawful Search & Seizure*

In Count II, Smith alleges Detectives Griffin, Coleman, and McNeal seized and searched him without a warrant, without probable cause, and without any other legal justification, in violation of the Fourth and Fourteenth Amendments. (Compl. ¶ 37.) Smith also alleges "one or more of the Defendant Officers" were aware of these violations and failed to intervene despite a reasonable opportunity to do so. (Compl. ¶ 38.) Defendants argue that Smith's allegations are confusing and unclear and that they fail to put Defendants on notice of who is being targeted or what specific violations occurred.

When all reasonable inferences are construed in Smith's favor, Smith's claim that he was improperly searched and seized by Detectives Griffin, Coleman, and McNeal is

4

sufficient to survive a motion to dismiss. Smith alleges the three Detectives placed him in a police car, took him to the Dolton Police Department, and placed him in a holding cell without a warrant, probable cause, or legal justification. Smith also alleges the same three Detectives searched his person. These allegations are sufficient to overcome a motion to dismiss.

Smith's failure-to-intervene allegations are not so clear. Smith states, "On information and belief, one or more of the Defendant OFFICERS were aware of the misconduct of his fellow officers with respect to PLAINTIFF, had a reasonable opportunity to intervene to prevent it, but failed to do so." (Compl. ¶ 38.) These allegations simply fail to put any of the Defendants on notice as to whether they are the target of Smith's allegations. *Cf. Choyce v. Friar*, No. 08 C 202, 2008 WL 2567037, at *3 (N.D. Ill. June 24, 2008) (finding that "the identities of the actual officers that were plausibly involved in [plaintiff's] claims is a necessary fact that must be pled in order to properly put these individual Defendants on notice of the claims brought against them"). While Smith attributes specific acts to specific persons throughout his complaint, his failure-to-intervene allegations are against "Defendant OFFICERS," a term that is not defined in Smith's Complaint, which, at other times, refers to three named detectives, a named sergeant, the chief of police, and other "unknown officers." Furthermore, Smith does not even allege anyone other than Detectives Griffin, Coleman, and McNeal were present at the restaurant when Smith was allegedly searched and seized. Accordingly, Count II is dismissed as to all Defendants except Detectives Griffin, Coleman, and McNeal.

*Count IV – Due Process*

In Count IV, Smith alleges Detectives Griffin, Coleman, and McNeal, as well as Chief Fox and other unknown officers, deprived Smith of due process "by withholding material exculpatory evidence in violation of the Fourth and Fourteenth Amendment to the United States' Constitution" and that Smith suffered physical, emotional, and pecuniary harm as a direct result. (Compl. ¶¶ 44-45.) Both Smith and Defendants characterize this claim as alleging a violation of *Brady v. Maryland*, 373 U.S. 83 (1963) (*Brady*), which held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process. Defendants argue Count IV is flawed for two reasons: (1) it fails to meet the base requirements to plead a *Brady* violation; and (2) it equates withholding exculpatory evidence with the making of false statements, in contravention of established case law.[1]

Defendants' second argument is misplaced. Although it is true that a false statement from a police officer is not a *Brady* violation, *Carvajal v. Dominguez*, 542 F.3d 561, 567 (7th Cir. 2008), Count IV is not based on Defendants' alleged false statements; it is based on their alleged destruction of 9-1-1 and video-surveillance tapes.

Defendants' first argument also fails. A *Brady* violation has three elements: "(1) the evidence at issue is favorable to the accused, either being exculpatory or

---

[1] Defendants also argue that Smith's due-process claim should be dismissed because Smith brought it under the Fourth and Fourteenth (rather than the *Fifth* and Fourteenth) Amendments. This error is not a sufficient basis for dismissal if Defendants are otherwise on notice of the claims asserted against them. *See Nature Coast Collections, Inc. v. Consortium Svc. Mgmt. Group, Inc.*, No. 06 C 7195, 2009 WL 448903, at *7 (N.D. Ill. Feb. 23, 2009) ("Reading the complaint as a whole, it appears that Plaintiff's misstep was a mere typo and that Defendants received fair notice of the claims against them.").

impeaching; (2) the evidence must have been suppressed by the government, either willfully or inadvertently; and (3) there is a reasonable probability that prejudice ensued – in other words, 'materiality.'" *Id.* at 566-67. Evidence is material "[i]f there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (citation omitted). Smith clearly alleged the government suppressed the alleged tapes. The issue is whether Smith pleaded that the tapes were material and exculpatory.

Defendants argue that Smith's acquittal forecloses any finding of materiality necessary to support a *Brady* claim, relying on *Rodriguez v. Woodall*, 189 F. App'x 522 (7th Cir. 2006) (*Rodriguez*). But *Rodriguez* is an unpublished, non-precedential order. *See* Cir. R. 32.1(c) ("No order of this court issued before January 1, 2007, may be cited except to support a claim of preclusion (res judicata or collateral estoppel) or to establish the law of the case from an earlier appeal in the same proceeding."). Moreover, contrary to Defendants' assertions, the *Rodriguez* court did not state that wrongful conviction is the only injury that can form the basis for a civil *Brady* violation; it merely addressed the particular facts of that case, in which the plaintiff alleged an improper jury instruction resulted in a wrongful conviction and imprisonment. *See id.* at 527. Smith need only allege the government's violation deprived him of "life, liberty, or property, without due process of law," U.S. Const. amend. XIV; and courts in the Seventh Circuit have found such violations can exist even without a guilty verdict. *See, e.g., Mosley v. City of Chicago*, No. 06 C 6314, 2007 WL 2608517, at *2 (N.D. Ill. Sept. 4, 2007); *Carrocia v. Anderson*, 249 F. Supp. 2d 1016, 1023 (N.D. Ill. 2003); *Kidd v. City of Chicago*,

No. 02 C 9534, 2003 WL 22243938, at *1-2 (N.D. Ill. Sept. 26, 2003); *see also Parish v. City of Chicago*, No. 09-1385, slip op. at 6 (7th Cir. Feb. 3, 2010) (stating that *Brady*-type due process claim may still exist despite acquittal if prompt disclosure of suppressed evidence "would have altered the prosecution's decision to proceed to trial").

Defendants' argument that Smith failed to allege the tapes were exculpatory also fails. At this stage in the litigation, the allegations need only "plausibly" suggest that the plaintiff has a right to relief, raising that possibility above a "speculative level." *Twombly*, 550 U.S. at 555. Accepting Smith's allegations as true, it is plausible that a 9-1-1 recording and a video-surveillance tape documenting the alleged incidents would be both material and exculpatory. At this stage, no further factual detail is necessary. Defendants' Motion is denied as to Count IV.

*Count V – § 1983 Conspiracy*

In Count V, Smith alleges Detectives Griffin, Coleman, and McNeal, along with Sergeant Rempson, Chief Fox, and Inspector General Shaw, "impliedly or expressly conspired and agreed to violate PLAINTIFF'S constitutional rights and to cover up their own and each others' misconduct, acting in furtherance of this conspiracy." (Compl. ¶ 47.) Defendants argue the claim must fail due to Smith's failure to plead any denial of his right to access to the courts and his failure to meet heightened pleading requirements for conspiracy counts.

Defendants cite *Vasquez v. Hernandez*, 60 F.3d 325 (7th Cir. 1995) (*Vasquez*), as holding that a plaintiff must demonstrate a denial of access to the courts in order to sustain a § 1983 civil conspiracy claim. But *Vasquez* only noted the plaintiff's failure to

allege any deprivation of access to the courts because that was the specific constitutional injury alleged in that case. *Id.* at 328 (noting plaintiffs' claim that defendants' "conspiracy of silence deprived them of their constitutional right to seek judicial relief for their injury"). Here, Smith does not allege he was denied access to the courts; rather, Smith alleges Defendants conspired together to falsely arrest him, deny him medical attention, deny him due process, and maliciously prosecute him. (Pl. Opp'n Br. 8.)

"Section 1983 does not, however, punish conspiracy; an actual denial of a civil right is necessary before a cause of action arises." *Goldschmidt v. Patchett*, 686 F.2d 582, 585 (7th Cir. 1982) (citation omitted). Proof of civil conspiracy simply broadens the scope of liability under § 1983 to include individuals who were part of a conspiracy but did not act directly to deprive plaintiff of his or her constitutional rights. *Miller v. Village of Dolton*, No. 94 C 765, 1995 WL 137051, at *5 (N.D. Ill. Mar. 28, 1995). Thus, Smith's conspiracy claim will not serve as an alternative theory of liability if no other constitutional violation is found to exist, but it can extend liability to individuals who did not directly deprive Smith of his rights.

However, only one of Smith's conspiracy theories can support a § 1983 suit; the remaining theories are untenable. First, Smith's conspiracy count cannot be based on Smith's malicious prosecution claim because the Seventh Circuit does not permit a § 1983 action for malicious prosecution if a state remedy exists. *See Newsome v. McCabe*, 256 F.3d 747, 751 (7th Cir. 2001) (holding that the existence of a tort claim under state law "knocks out any constitutional tort of malicious prosecution, because [the] due process of law is afforded by the opportunity to pursue a claim in state court").

9

And in Illinois, such a remedy does exist. *See Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996). Second, the Complaint does not support Smith's allegation that Defendants conspired to falsely arrest him. Smith alleges Detectives Griffin, Coleman, and McNeal were the only persons who arrested him; and all of Smith's allegations concerning any agreed misconduct occurred after the arrest. Third, the allegations in the Complaint simply do not indicate any conspiracy to deny medical attention. Rather, Smith alleges that certain Defendants "knowingly failed to provide medical care" to Smith. (Compl. ¶ 41.) To the extent Smith has stated a claim for relief regarding a failure to provide medical treatment, that claim is for direct liability only.

As discussed above, however, Smith alleges his right to due process was violated by the deliberate withholding and/or destruction of material and exculpatory evidence. For purposes of a motion to dismiss, Count V thus states a claim against Detectives Griffin, Coleman, and McNeal and Sergeant Rempson, Chief Fox, and Inspector General Shaw, to the extent any of them did not directly suppress evidence but nonetheless conspired with others who did in fact commit those acts. Defendants' Motion is denied as to Count V.

*Count VI – Policy Claim*

In Count VI, Smith alleges the Village of Dolton, through deliberate indifference and a failure to implement sufficient hiring, training and/or oversight and punishment mechanisms, "allows its police officers to violate the constitutional rights of citizens without fear of any meaningful investigation or punishment" and that such conduct is a "widespread practice," constituting a "*de facto* policy." (Compl. ¶¶ 50-52.) Smith also

10

alleges Inspector General Shaw "deliberately turned a blind eye to repeated instances of police misconduct" and that the tenure of Inspector General Shaw and Chief Fox has "created an environment where rogue officers are protected from any ramifications for their misconduct based on their political, familial, or personal ties to SHAW and/or other Village officials." (Compl. ¶¶ 53-54.) Smith alleges these acts of misconduct directly and proximately caused Smith's injuries. (Compl. ¶ 55.) Defendants argue Count VI merely states implausible facts and abstract recitations of elements of a cause of action and that these allegations fail to provide sufficient notice to Defendants of the claims against them.

Count VI appears to set forth a claim under *Monell v. Department of Social Services of New York*, 436 U.S. 658, 690-91 (1978) (*Monell*), which holds that a municipality can be liable for constitutional violations that occur as a result of municipal policy or practice. A plaintiff can plead a *Monell* claim by alleging the existence of one of the following situations: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Sims v. County of Bureau*, 506 F.3d 509 (7th Cir. 2007).

Although they are at times confusing, Smith's allegations fit within the second method of establishing a *Monell* claim. These allegations regarding a failure to train, supervise, and punish bad behavior present enough of a claim to survive Defendants'

Motion to Dismiss and put them on notice of what is being asserted against them. Defendants' Motion to Dismiss is denied as to Count VI.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is granted in part and denied in part. Count II is dismissed as to all Defendants except Detectives Griffin, Coleman, and McNeal. Smith is granted leave to file an amended complaint within 28 days after the entry of this order to address the deficiencies identified with regard to Count II. Defendants' Motion is denied as to the remaining counts.

Date: February 25, 2010

JOHN W. DARRAH
United States District Court Judge